## TIMOTHY GRADY

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 9, 1888.*

1. CRIMINAL LAW—*right of discharge for want of prosecution.* A person was committed upon a criminal charge, by the coroner's jury, on April 6, 1887, and was indicted April 27, 1887, and was arraigned on May 2, 1887, when he pleaded not guilty. He was confined in jail from the time of his commitment until his trial and conviction, on July 18, 1887. The terms of the court began on the first Monday of each month. At the July term he entered his motion for a discharge, which was overruled. The record failed to show a continuance from the June term to the July term: *Held,* that the proper construction of the statute is to exclude the April term, and that the July term was the third term, within the meaning of the statute, and that in the absence of any showing in the record to the contrary, it would be presumed that the cause was continued in the manner allowed by the statute, and for the reasons therein named, and that there was no error in refusing the discharge.

2. NEW TRIAL—*newly discovered evidence.* It is no error to refuse a new trial when testimony alleged to be newly discovered is merely in the nature of impeaching evidence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. J. P. ALTGELD, Judge, presiding.

Mr. DANIEL DONAHOE, and Mr. JOSEPH B. DAVID, for the plaintiff in error.

Mr. JOEL M. LONGENECKER, State's Attorney, for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

At the April Term, 1887, of the Criminal Court of Cook County, the plaintiff in error, Timothy Grady, was indicted for the murder on April 3, 1887, of Michael O'Brien, a police officer of the city of Chicago. At the July Term, 1887, of that Court he was tried and convicted of manslaughter, the jury fixing his punishment at seventeen years' imprisonment in the

penitentiary. Judgment has been rendered and sentence pronounced in accordance with the verdict.

Plaintiff in error urges three reasons for the reversal of the judgment: first, because he was not set at liberty under section 18 of Division 13 of the Criminal Code, (Hurd's Rev. Stat. chap. 38, sec. 438): second, because a new trial was not granted for the alleged insufficiency of the evidence to support the verdict; third, because a new trial was not granted on the ground of newly discovered evidence.

The section referred to is as follows: "Any person committed for a criminal or supposed criminal matter, and not admitted to bail and not tried at or before the second term of the court having jurisdiction of the offense, shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner. If such court, at the second term, shall be satisfied that due exertions have been made to procure the evidence for and on behalf of the People, and that there are reasonable grounds to believe that such evidence may be procured at the third term, it shall have power to continue such case till the third term. If any such prisoner shall have been admitted to bail for a crime other than a capital offense, the court may continue the trial of said cause to a third term, if it shall appear by oath or affirmation that the witnesses for the People of the State are absent, such witnesses being mentioned by name, and the court shown wherein their testimony is material."

On July 12, 1887, being one of the days of the July Term, 1887, of said Court, the defendant made a motion to be discharged on the grounds, that he was committed by the Coroner's jury on April 6, 1887, (which was one of the days of the April Term) on a charge of the murder of O'Brien, and had been continuously confined in jail ever since; that three terms of Court had been held since such commitment; that he was indicted on April 27, 1887, and was arraigned and pleaded not guilty on May 2, 1887, and had always since then been

ready for trial, and had at no time, either by himself or coun-
sel, applied for a delay or continuance. The grounds as thus
stated were set forth in an affidavit presented in support of the
motion. The motion was overruled, exception was taken and
the case was set for trial on July 18, 1887.

The terms of the Criminal Court of Cook County begin on
the first Monday of each month. Therefore, between the April
Term, when plaintiff in error was committed and indicted, and
the July Term, when he was tried, two terms intervened to-wit:
the May Term and the June Term. Of these, the June Term
is "the second term" as intended by the statute. In deter-
mining what is "the second term," the term, at which the
commitment is made, which, in this case, is the April Term,
must be excluded. It follows that the July Term was the
"third term" within the meaning of the statute. There is
nothing, which militates against this construction in *Brooks*
v. *The People* 88 Ill. 327.

In the latter case, the commitment was made and the in-
dictment was returned at the March Term, 1877, of the Crim-
inal Court of Cook County, but the indictment was disposed of
by a *noll. pros.* as to one count and by quashing the other
counts. A new indictment was found at the April Term, 1877,
and the motion for discharge was made and overruled and the
trial was had at the July Term 1877. The April Term was
there held to be the first term, and, consequently, the July
term was regarded as the fourth term, because the March Term
was the term at which the prisoners were committed. The
reason given for the ruling in that case was, that the prisoners
had been held continuously in custody from March 14 of the
March Term, and that their rights were to be considered "as
if there had been no dismissal of the first indictment, or as if
the present indictment (that found at the April Term) had been
found at the March term."

Under the construction, which excludes from the count the
term at which the commitment is made, the court below, in

the case at bar, could have continued the cause from the June term, 1887, to the July term, 1887, upon the application of the defendant, or upon the motion of the People, the latter proving such grounds for postponement as are required by the statute. It is admitted, however, that the record does not show a continuance from the June term to the July term. In the absence of such showing, the presumption is that the cause was continued in the manner allowed by the statute and for the reasons therein specified.

If it were allowable to consider the affidavit of the plaintiff in error, whose contents have been hereinbefore stated, for the purpose of proving that which the record itself is silent about, then it would be proper also to take into consideration the affidavits upon this subject of the State's Attorney and his assistant. The latter affidavits tend to show, that the cause was continued from the June term to the July term upon the application of the plaintiff in error.

We are of the opinion, that there was no error in overruling the motion for discharge made on July 12, 1887.

The evidence is abundantly sufficient to sustain the verdict. Officer Dillon swears, with positiveness and distinctness, that he was with O'Brien at the corner of Quinn Street and the alley crossing it to the southward of Archer Avenue, between the hours of eleven and twelve o'clock on the night of April 3, 1887, which was a bright moonlight night, and then and there, aided by the light of a street lamp, as well as by the natural clearness of the night, saw the plaintiff in error shoot O'Brien, and saw O'Brien fall, and helped him to the corner of Archer Avenue and Quinn Street, and there saw him again fall from the effects of the wound. Dillon knew the plaintiff in error and earlier on the same evening had tried to arrest him for shooting at O'Brien.

On the morning of April 4th plaintiff in error was arrested when coming out of or from behind a barn in the alley, where he had concealed himself, and was taken into the presence of

O'Brien a short time before the latter died.   O'Brien identified and pointed to Grady as the man who had killed him.   O'Brien's dying declaration, that plaintiff in error had fired the fatal shot, was made in the presence of Lawler and Fitzgerald, who both testified to it.   Lawler was the notary, who had been sent for to write down the dying declaration.

The story, told by two of the companions of plaintiff in error, who were with him on the night of April 3d and went with him into the barn, that, shortly after hearing the firing of shots, they saw a man with a skull cap and light pants running through the alley, is very improbable.   At any rate it was a matter for the jury to decide, and we are not of the opinion that their verdict is contrary to the weight of the evidence.

The newly discovered evidence consists of statements made in the affidavit of one Anderson, presented on the motion for a new trial.   Anderson says, that he went to the corner of Quinn Street and Archer Avenue, while Dillon and O'Brien were there on the night of the shooting, and saw O'Brien lying on the sidewalk, where he had fallen after being shot; that he heard O'Brien say:   "I don't know who shot me; Dillon, for God's sake send for a priest;" that he also at the same time heard Dillon say that he did not know who fired the shot.

The only object of Anderson's evidence would be to impeach Dillon and O'Brien.   It is not error to refuse a new trial where the testimony, alleged to be newly discovered, is merely in the nature of impeaching evidence.   (*Knickerbocker Ins. Co.* v. *Gould* 80 Ill. 388).

The judgment of the Criminal Court of Cook County is affirmed.

*Judgment affirmed.*